IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **MALIK N. MARTIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CASE NO.** |
| **v.** | : | **5:24-CV-94 (CAR)** |
| | : | |
| **MIDDLE GEORGIA STATE** | : | |
| **UNIVERSITY,** *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

<u>**ORDER ON MOTION TO PROCEED IN FORMA PAUPERIS**</u>

Currently before the Court is Plaintiff Malik Nganga Martin's Motion to Proceed *In Forma Pauperis* ("IFP"). Having reviewed Plaintiff's Affidavit, it appears he is unable to pay the cost of commencing this action or the United States Marshal service fees. Accordingly, Plaintiff's Motion to Proceed IFP [Doc. 2] is **GRANTED**. If Plaintiff wishes to maintain this action, then pursuant to 28 U.S.C. § 1915(e)(2) **he must file a recast Complaint** within 21 days, which will supersede his original Complaint, as hereinafter directed.

**I. Motion to Proceed IFP**

Motions to proceed IFP are governed by 28 U.S.C. § 1915(a)(1), which provides:

[A]ny court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a

person who submits an affidavit that includes a statement of all assets such prisoner possesses[1] that the person is unable to pay such fees or give security therefor.

When considering a motion to proceed IFP filed under § 1915(a), "[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty."[2] The Court should accept statements contained in an IFP affidavit, "absent a serious misrepresentation."[3] Although a litigant need not show he is "absolutely destitute" to qualify under § 1915(a), he must show that "because of his poverty, he is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents."[4]

The Court has reviewed Plaintiff's application to proceed IFP and is satisfied that he cannot pay the court fees because of poverty. Plaintiff states that his only source of income is his eBay business, from which he earned $681.17 in the last 90 days.[5] Plaintiff attests he owns five vehicles—one 2008 Scion TC, one 2011 Scion XD, one 1989 Volvo, one 1999 Toyota Four Runner, and one 1989 Toyota Corolla—all but one of which are

---

[1] "Despite the statute's use of the phrase 'prisoner possesses,' the affidavit requirement applies to all persons requesting leave to proceed IFP." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

[2] *Martinez v. Kristi Keaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004) (internal quotation marks and citation omitted).

[3] *Id.*

[4] *Id.* (citation omitted).

[5] Plaintiff's Motion to Proceed IFP [Doc. 2].

inoperable and need major repairs.[6] Plaintiff states his monthly expenses for electricity, water bill, food, gasoline, and taxes equals roughly $600, and he owes roughly $3,000 to a collections agency.[7] Thus, Plaintiff qualifies as a pauper under § 1915, and his Motion [Doc. 2] is **GRANTED**.

## II. Preliminary Screening

Because Plaintiff is proceeding IFP, the Court is required to screen his Complaint and must *sua sponte* dismiss the complaint or portion thereof which (1) is found to be frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief.[8] Title 28 U.S.C. § 1915(e) "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."[9]

Dismissal for failure to state a claim is appropriate when the facts as pleaded do not state a claim for relief that is "plausible on its face"[10] and is governed by the same standard as a dismissal under Federal Rule of Civil Procedure 12(b)(6).[11] But, *pro se*

---

[6] *Id.*

[7] *Id.*

[8] 28 U.S.C. § 1915(e)(2)(b).

[9] *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[11] *See, e.g.*, *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

"pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."[12] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[14]

### A. Factual Background

Plaintiff alleges a variety of civil rights, constitutional, and state law violations stemming from an order ("Trespass Order") from the Middle Georgia State University's ("MGSU") Police Chief Tripp Mitchell that barred Plaintiff from MGSU's campus. Plaintiff seeks declaratory relief and damages.

Plaintiff alleges that sometime in November of 2021, he sought to use the computers at MGSU's library, as he had done many times before, but was denied access and directed to contact Defendants Tamatha Lambert or Deborah Stanfield. Lambert was the Library Director and Stanfield was the Assistant Library Director. On December 17, 2021, Lambert called Plaintiff, and Plaintiff "informed [her] that MGSU is a publicly owned institution and denying Bibb County Residents access to computer services was

---

[12] *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) (citations omitted).
[13] *Ashcroft*, 556 U.S. at 663.
[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

unconstitutional and discriminatory and vowed to sue MGSU for injunctive relief as the removal of the computers was intended to segregate indigents from using the library."[15] Lambert informed Plaintiff he was welcome to borrow books, but could not use the computers because of COVID-19 restrictions. Later the same morning, Plaintiff went to the library circulation desk where he told Defendant Brandi McDonough that he wanted to file a complaint against Lambert and Stanfield. He also requested to speak to the President of MGSU and the MGSU Admissions Director regarding enrollment. Plaintiff then requested to borrow books, but McDonough informed Plaintiff that Lambert had "instructed her not loan him any books and that he [could not] use the library without her approval."[16]

Plaintiff then asked to speak to Lambert or Stanfield or the MGSU President, and McDonough told him to wait in the lobby while she tried to reach them by phone. Plaintiff then alleges that while he was "peaceably assembled at the entrance of the Library," the MGSU Police Chief, Defendant Tripp Mitchell, "accosted" him.[17] Mitchell told Plaintiff that he had spoken to Lambert, who had said Plaintiff was "causing a disturbance," "taking pictures of the campus staff and students without their consent [and] making everybody feel threatened, violated and uncomfortable."[18] Mitchell told Plaintiff that

---

[15] Doc. 1 at 5.

[16] *Id.*

[17] *Id.* at 6.

[18] *Id.*

because of his actions, "they decided to trespass the Plaintiff under pains of arrest."[19] Plaintiff, a black male, alleges the Trespass Order "is predicated on three white women 'feeling threatened' by a black male when in fact the underlying motivation is racial animus and retaliation."[20] The three white women Plaintiff refers to are Lambert, Stanfield, and McDonough.

Plaintiff then vowed to sue them all in federal court and demanded Mitchell give him his business card. Mitchell did not have one on him, so Plaintiff went with him to the precinct a few blocks from the library. At the precinct, Mitchell introduced Plaintiff to Defendant Officer Marissa Parker and reiterated that Plaintiff was "formally trespassed" and could never come back to or apply to MGSU, or he would face arrest.[21]

Plaintiff obtained the police report for the incident "through Open Records."[22] Plaintiff alleges that in the report, Defendants Mitchell, Parker, Lambert, Stanfield, and Coleman charged him with disorderly conduct pursuant to O.C.G.A. § 16-11-39 for making Defendants Lambert and Stanfield "feel threatened," which resulted in them giving him a "verbal trespass warning."[23] Plaintiff further claims he obtained the 911 call McDonough made to dispatch to have Plaintiff escorted off the property, and she stated

---

[19] *Id.*

[20] *Id.* at 10.

[21] *Id.* at 7.

[22] *Id.*

[23] *Id.*

Plaintiff "was nasty and rude towards [Defendants Lambert and Stanfield] in their prior phone conversations."[24]

On December 16, 2022, nearly one-year after Plaintiff was barred from MGSU, Plaintiff emailed Renee Rainee, "MGSU's General Counsel and Legal Laison," an "Alternative Dispute Resolution" asking MGSU to reconsider, repeal, and abrogate the December 2021 order barring Plaintiff from campus. Rainee replied and said MGSU was not interested in an alternative dispute resolution. On March 15, 2024, Plaintiff filed this case, over two years after he was initially barred from MGSU campus.

### B. Analysis

Plaintiff brings a variety of claims based on civil rights, constitutional, and state law violations. Liberally construing his Complaint, Plaintiff alleges: (1) § 1983 claims for alleged violations of his equal protection, procedural due process, and First Amendment rights stemming from the Trespass Order barring him from MGSU; (2) violations of his First and Fourteenth Amendment rights due to the MGSU Police Department's display of the "thin blue line" American flag; (3) public accommodations violations under Title II of the Civil Rights Act, 42 U.S.C. § 2000a-2; (4) a § 1983 claim that Defendant Coleman conspired to deprive him of his civil rights and liberties; (5) state law claims that

---

[24] *Id.*

Defendants interfered with, and conspired to interfere with, his use of a right of way; and

(6) a § 1983 claim against MGSU for respondeat superior.

### 1. Claims Based on Trespass Order

Plaintiff alleges he has been barred from the MGSU Campus in violation of his First and Fourteenth Amendment rights.[25] He contends the Trespass Order was issued because of racial animus and to prevent him from exercising his First Amendment rights. Plaintiff contends he is barred from the entire campus, including the library, cafeteria, and public bus stops and seeks a declaratory judgment and monetary damages. The Court construes Plaintiff's allegations to assert claims for violations of his equal protection, procedural due process, and First Amendment rights. As explained below, Plaintiff's allegations fail to sufficiently state a claim for an equal protection violation, they but do state claims for procedural due process violations and First Amendment retaliation.

---

[25] Plaintiff further alleges he has been denied his Sixth Amendment rights to a speedy trial, to be heard by an impartial jury, and to be informed of the nature and cause of the accusation against him. "By its express terms, the Sixth Amendment does not apply to civil cases, and there is no civil equivalent to a constitutional right to a speedy trial." *Branham v. Astrue*, No. 7:08-CV-123, 2009 WL 1025393, *2 (M.D. Ga. Apr. 15, 2009) (citations omitted). The proper time to raise a speedy trial violation under the Sixth Amendment is "during the underlying criminal proceeding, not as a collateral attack in a civil action." *Colomb v. James*, No. 1:20-cv-00438-SDG, 2020 WL 7041498, *5 (N.D. Ga. Dec. 1, 2020). Thus, these claims are **DISMISSED.**

### a. Equal Protection Claim

Plaintiff's allegations are insufficient to state an equal protection claim. "The Equal Protection Clause of the Fourteenth Amendment provides: 'No State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'"[26] To avoid dismissal of his equal protection claim under § 1983, Plaintiff must allege facts "from which a racial motive for his treatment can be inferred."[27] Plaintiff's allegation that he was barred from campus because he is a black male is too conclusory to state a claim. For his equal protection claim to proceed, Plaintiff must amend his Complaint to allege facts sufficient to show Defendants discriminated against him based on his race.

### b. Procedural Due Process Claims

Plaintiff's allegations raise two claims for violations of his Fourteenth Amendment procedural due process rights: (1) denial of his right to access a public library and be on public land, and (2) denial of a property interest in education at MGSU. As explained below, Plaintiff sufficiently states a claim for the alleged denial of his rights to access the MSGU library and be on public land, but he fails to sufficiently state a claim for the alleged denial of any property interest in an education at MGSU.

To state a § 1983 procedural due process claim, a plaintiff must show: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action;

---

[26] *Lambert v. Bd. of Trustees*, 793 F. App'x 938, 942 (11th Cir. 2019) (quoting U.S. Const. amend. XIV, § 1).
[27] *Id.*

and (3) constitutionally-inadequate process."[28] Individuals also have a liberty interest to be on public lands "that are open to the public generally."[29] But "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated."[30] And although the First Amendment further "protects the right to receive information, including the 'right to some level of access to a public library,'"[31] "that right of access does not permit patrons to engage in 'conduct that would disrupt the quiet and peaceful library environment.'"[32] To have a property interest in a [government] benefit, a person . . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[33] "[A] property interest in *continued* enrollment in a state school is an important entitlement protected by the Due Process Clause of the Fourteenth Amendment."[34]

Plaintiff's allegation that he was deprived of his constitutionally protected liberty interest by being indefinitely barred from MGSU's campus without adequate process is sufficient for his procedural due process claim to proceed based on the right to access

---

[28] *Catron v. City of St. Petersburg*, 658 F.3d 1260, 1266 (11th Cir. 2011) (quoting *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)).

[29] *Id.* (quoting *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999)).

[30] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) (citations omitted).

[31] *In re Watkins*, No. 23-10359, 2023 WL 5664171, *2 (11th Cir. Sept. 1, 2023) (quoting *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992)).

[32] *Id.* (quoting *Kreimer*, 958 F.2d at 1256).

[33] *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

[34] *Barnes v. Zaccari*, 669 F.3d 1295, 1305 (11th Cir. 2012) (emphasis added).

public libraries and be on public land. But Plaintiff fails to state a procedural due process claim based on a property interest in an education at MGSU. Plaintiff contends the Trespass Order deprives him of his legitimate claim of entitlement to a public education at MGSU. It appears from Plaintiff's allegations that he was not enrolled at MGSU when he was barred from campus, thus Plaintiff has no legitimate claim of entitlement to an education at MGSU. Plaintiff has only an "abstract desire" and "unilateral expectation"[35] of an education at MGSU, not a constitutionally protected property interest.

### c. First Amendment Retaliation

Plaintiff also sufficiently states a First Amendment retaliation claim. To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech.[36] Plaintiff's allegation that MGSU indefinitely barred him from the entire MGSU campus because he complained to library staff about the library's policies is sufficient for his claim to proceed.

---

[35] *Roth*, 408 U.S. at 577 (1972).

[36] *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

### 2. Claims Based on the Thin Blue Line Flag

Plaintiff seeks declaratory and injunctive relief for First Amendment and Fourteenth Amendment equal protections violations caused by the MGSU Police Department's display of the "thin blue line" version of the American flag. Plaintiff describes this flag as the "Flag of Tyranny" and argues it is "emblematic of white nationalist, neo-Nazi, and alt-right movements in the US."[37] Plaintiff contends its display is "intended to instill fear, intimidate and deter persons from criticizing and redressing their grievances" thereby depriving them of their First and Fourteenth Amendment rights.[38]

### a. Equal Protection Claim

First, Plaintiff's allegations do not establish he has standing to bring his equal protection claim. To demonstrate standing, a plaintiff must prove (1) that he has suffered a concrete and particularized injury, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable judicial decision.[39] This injury "must be 'concrete and particularized,' as well as 'actual or imminent.'"[40] An abstract injury because of racial stigmatization is not cognizable.[41] "[S]uch injury accords

---

[37] Doc. 1 at 13.

[38] *Id.*

[39] *Carney v. Adams*, 592 U.S. 53, 58 (2020) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)).

[40] *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

[41] *Allen v. Wright*, 468 U.S. 737, 755–56 (1984).

a basis for standing only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct."[42]

Plaintiff alleges the flag "induces emotional stress, fear particularly with indigents, students, minorities and victims of police brutality,"[43] but such stigmatic injury is insufficient to create standing without actual denial of equal treatment that is caused by the display of the flag. To establish he has standing, Plaintiff must amend his Complaint to allege facts demonstrating he has an injury that was caused by the challenged conduct.

Second, Plaintiff's allegations fail to sufficiently state an equal protection claim. To state an equal protection claim, Plaintiff must (1) "demonstrate that the flying of the [thin blue line] flag produces disproportionate effects along racial lines" and (2) "prove that racial discrimination was a substantial or motivating factor behind [the decision to fly the flag]."[44] To "demonstrate disproportionate impact along racial lines," plaintiff must allege facts that show the thin blue line flag imposes on a certain group "a measurable burden or denies them an identifiable benefit."[45] Plaintiff's allegations that the flag is "oppressive, racist, tyrannical, undemocratic [and is] intended to instill fear, intimidate and deter persons from criticizing and redressing their grievances" and that it induces fear and stress in "indigents, students, minorities and victims of police brutality" are too

---

[42] *Id.* at 755 (quoting *Heckler v. Mathews*, 465 U.S. 728, 739–40 (1984)).

[43] Doc. 1 at 13.

[44] *Coleman v. Miller*, 117 F.3d 527, 528 (11th Cir. 1997).

[45] *Id.* at 530.

conclusory to state a claim. For Plaintiff's claim to proceed, he must amend his Complaint to allege facts demonstrating (1) the thin blue line flag flown on MGSU campus caused a discriminatory impact, and (2) the decision to fly the flag was motivated by racial discrimination.

### b. First Amendment Claim

Plaintiff's allegations are insufficient to state a First Amendment claim. "The First Amendment prohibits governments from abridging free speech."[46] To state a claim for a First Amendment violation, Plaintiff must allege facts sufficient to show MGSU's flying of the thin blue line flag either "prohibits [him] from speaking or punishes [him] for speaking."[47] Plaintiff's allegations that the flag "induces emotional stress, fear particularly with indigents, students, minorities and victims of police brutality" are too general and conclusory to state claim. For Plaintiff's First Amendment claim to proceed, he must allege facts sufficient to establish the flag chills his speech.

### 3. Claims Based on the Police Report

Plaintiff brings a § 1983 claim against Defendant Coleman for "approv[ing]" a police report "executed in bad faith" by Defendant Parker. This police report was allegedly created 26 days after Plaintiff was barred from MGSU campus and "charged" Plaintiff with disorderly conduct pursuant to O.C.G.A. § 16-11-39.

---

[46] *NAACP v. Hunt*, 891 F.2d 1555, 1565 (11th Cir. 1990)).
[47] *Id.*

First, it appears Plaintiff's § 1983 claim is barred by the two-year statute of limitations.[48] "Generally, 'the statute of limitations does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"[49] Plaintiff takes issue with a police report that Defendant Coleman "approved" on January 12, 2022.[50] This action was not filed until over two years later, on March 15, 2024. Thus, if Plaintiff seeks to maintain this claim, he must amend his Complaint and explain how this claim is not time-barred.

Second, if the claim is not barred by the statute of limitations, any claim for monetary damages may need to be stayed if Plaintiff is currently being prosecuted for disorderly conduct in state court.[51] There is "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances."[52] The Supreme Court requires a court to "abstain under *Younger* if: (1) state judicial proceedings are ongoing and the relief sought by the plaintiff would interfere with the state proceeding; (2) the federal proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal challenges in the state

---

[48] *Kelsey v. Macon-Bibb Cnty. Bd. Of Comm'rs*, 647 F. App'x 1002, 1004 (11th Cir. 2016) (citing *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003)).

[49] *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996)).

[50] Doc. 1 at 20.

[51] *Deakins v. Monaghan*, 484 U.S. 193, 202 (1988); *see Watson v. Fla. Jud. Qualifications Comm'n*, 618 F. App'x 487, 491 (11th Cir. 2015) (citation omitted).

[52] *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *Younger v. Harris*, 401 U.S. 37, 41 (1971).

proceedings."[53] "The relief sought need not directly interfere with an ongoing proceeding or terminate an ongoing proceeding in order for *Younger* abstention to be required."[54]

Plaintiff's allegations suggest he was charged with disorderly conduct in state court. Although Plaintiff is not directly challenging his prosecution, it appears granting him monetary relief would indirectly interfere with the state court proceeding by making factual determinations about the substance of the police's investigation. Thus, for his § 1983 claim based on the police report to proceed, Plaintiff must amend his Complaint and address whether the disorderly conduct charge is still pending, and if it is not, how it was resolved.

### 4. Public Accommodations Claims

Plaintiff asserts claims for damages under Title II of the Civil Rights Act, 42 U.S.C. §§ 2000a and 2000a-2, alleging discrimination in places of public accommodation based on the police report "approved by" Defendant Coleman, retaliation by the individual Defendants through the Trespass Order, and supervisory liability against Defendant MGSU.

---

[53] *Carter v. Dep't of Child. & Fams.*, No. 21-13128, 2022 WL 2921310, at *2 (11th Cir. July 6, 2022) (citing *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1275–76 (11th Cir. 2003)).
[54] *31 Foster Children*, 329 F.3d at 1276.

Because damages are not available under Title II, these claims fail.[55] "Title II of the Civil Rights Act of 1964 permits injunctive relief only."[56] "To state a claim for injunctive relief, 'a plaintiff must show . . . a likelihood of substantial and immediate irreparable injury.'"[57] Thus, to prevent dismissal of his §§ 2000a and 2000a-2 claims, Plaintiff must amend his Complaint to state a claim for injunctive relief.

### 5. Interference with Right of Way Claims

Plaintiff's claims for interference with the right of way and civil conspiracy to interfere with the right of way are insufficient to state a claim. O.C.G.A. § 51-9-10 states: "The unlawful interference with a right of way or a right of common constitutes a trespass to the party entitled thereto." O.C.G.A. § 51-9-10 "protects the rights of users of rights of way from interference with their use. Moreover, '[o]wners of property which abuts a public road have the right to the use and enjoyment of such road in common with all other members of the public, as well as other rights such as ingress and egress which do not belong to the public generally.'"[58] "Owners of land abutting on a public highway have two separate and distinct kinds of rights in a highway. One is a public right to use and

---

[55] *Zinman v. Nova Southeastern Univ., Inc.*, No. 21-13476, 2023 WL 2669904, *4 (11th Cir. Mar. 29, 2023) (citing 42 U.S.C. § 2000a).

[56] *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1329 (11th Cir. 2013) (citing *Newman v. Piggie Park Ents., Inc.*, 390 U.S. 400, 402 (1968)).

[57] *Strober v. Payless Rental Car*, 701 F. App'x 911, 913 n.4 (11th Cir. 2017) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1007 (11th Cir. 1997)).

[58] *Moses v. Traton*, 286 Ga. App. 843, 845 (2007) (quoting *Holland v. Shackelford*, 220 Ga. 104, 111 (1964)).

enjoy the highway in common with all other members of the public; the other rights arise from their ownership of property contiguous to the highway which do not belong to the public generally."[59] A person whose rights in the second category—arising from their ownership of adjacent property—have been violated "may maintain an action for damages therefor against the wrongdoer."[60]

No allegations in the Complaint suggest Plaintiff owns property adjacent to a public road whose ingress or egress is impeded, as required by O.C.G.A. § 51-9-10. Unless Plaintiff can allege he is such a landowner in his amended Complaint, these claims must be dismissed.

### 6. Respondeat Superior Claim

Finally, Plaintiff's respondeat superior claim under § 1983 against Defendant MGSU must be **DISMISSED.** Plaintiff brings a respondeat superior claim against Defendant MGSU for "fail[ing] to train its employees on constitutional rights"[61] under § 1983. The Board of Regents "is a state agency that governs and manages the University System of Georgia and its member institutions,"[62] including Middle Georgia State

---

[59] *Barham v. Grant*, 185 Ga. 601, 604 (1937).

[60] *Id.* at 605.

[61] Doc. 1 at 18.

[62] *Bd. of Regents of the Univ. Sys. of Ga. v. Doe*, 278 Ga. App. 878, 878 (2006).

University. MGSU "is not a separate or distinct legal entity from the Board and, therefore, cannot sue or be sued in its own capacity."[63]

"The Eleventh Amendment bars suit in federal court against a state."[64] "Sovereign immunity under the Eleventh Amendment applies both to states and to those entities that are considered 'arm[s] of the state.'"[65] The Board of Regents is an arm of the state entitled to Eleventh Amendment immunity.[66] Plaintiff's respondeat superior claim against MGSU fails because MGSU cannot be sued in its own capacity, and the proper defendant, the Board of Regents, is immune from suit. Thus, because any amendment would be futile, Plaintiff's § 1983 respondeat superior claim against Defendant MGSU is **DISMISSED**.

## CONCLUSION

1. Plaintiff's Motion to Proceed IFP [Doc. 2] is **GRANTED.**

2. Plaintiff has sufficiently stated claims for a procedural due process violation and First Amendment retaliation based on the Trespass Order.

3. Plaintiff's § 1983 respondeat superior claim against Defendant MGSU is **DISMISSED** because any amendment would be futile.

---

[63] *Doe*, 278 Ga. App. at 878.
[64] *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 638 (11th Cir. 1992).
[65] *Nicholl v. Bd. of Regents of Univ. Sys. of Ga.*, 706 F. App'x 493, 495 (11th Cir. 2017) (quoting *Fouche v. Jekyll Island–State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983)).
[66] *Barnes v. Zaccari*, 669 F.3d 1295, 1308 (11th Cir. 2012); *Nicholl*, 706 F. App'x at 495.

4. If Plaintiff wishes to proceed with any of his remaining claims, he **MUST** submit a recast Complaint within twenty-one (21) days from the date of this Order.

5. If Plaintiff submits a recast Complaint, he must include his procedural due process and First Amendment retaliation claims based on the Trespass Order, because the Recast Complaint will supersede the original Complaint.

6. If Plaintiff does not file a Recast Complaint within twenty-one (21) days, only his claims for procedural due process and First Amendment retaliation based on the Trespass Order will proceed forward.

7. Upon receipt of any amended complaint, the Court will reevaluate the Complaint pursuant to 28 U.S.C. § 1915(e). **There will be no service of process until further notice from the Court.**

**SO ORDERED,** this 13th day of May, 2024.

S/ C. Ashley Royal _____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT